IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| **MARIO PEREA, individually and on behalf of others similarly situated,**<br><br>**Plaintiff,**<br><br>v.<br><br>**PORTFOLIO RECOVERY ASSOCIATES, LLC,**<br><br>**Defendants**. | Case No. 18-cv-06504<br><br>Judge Mary M. Rowland |

### MEMORANDUM OPINION & ORDER

Plaintiff Mario Perea, individually and on behalf of a purported class of similarly situated individuals, brings suit against Defendant Portfolio Recovery Associates, LLC ("PRA") alleging violations of the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692 *et seq*. Before the Court are the parties' cross motions for summary judgment. (Dkt. 53; 59). For the following reasons, summary judgment is granted for Plaintiff.

### BACKGROUND

Plaintiff Perea opened a Sears branded credit card through Citibank, N.A. and stopped making payments on the card on May 11, 2011. (Dkt. 60 at ¶¶ 7-8). Perea's account was charged off on December 22, 2011 with a balance of $2,455.08. (*Id*. at ¶ 9). On March 19, 2012, PRA acquired Perea's account from Citibank. (*Id*. at ¶ 10).

1

PRA is in the business of acquiring charged-off, past-due debts and attempting to collect on them. (*Id*. at ¶ 1).

On February 13, 2018, PRA attempted to collect the outstanding credit card debt from Perea through a dunning letter. (Dkt. 71 at ¶ 16). The letter stated that Perea owed $2,455.08 on his Sears credit card and provided him with multiple options to resolve the debt, including an option to pay according to a "Savings Plan" that offered discounts on the outstanding balance. (*Id*. at ¶¶ 17-18). If Perea chose to pay according to the savings plan, his "account w[ould] be considered 'Settled in Full.'" (*Id*. at ¶ 18). The letter included the following disclaimer:

> The law limits how long you can be sued on a debt and how long a debt can appear on your credit report. Due to the age of this debt, we will not sue you for it or report payment or non-payment of it to a credit bureau. In addition, we will not restart the statute of limitations on the debt if you make a payment.

(*Id*. at ¶ 19). At the time PRA sent the dunning letter, the statute of limitations on Perea's credit card debt had already expired and PRA was barred from reporting any information regarding the debt to credit bureaus.[1] (Dkt. 71 at ¶¶ 26-27).

PRA asserts that it included the first two sentences of the disclosure pursuant to a Consent Order with the Consumer Financial Protection Bureau ("CFPB") and that its policy is to continue treating a time-barred debt as expired even if a consumer makes a partial payment. (Dkt. 60 at ¶¶ 5; 16). Perea testified at his deposition that he was confused by the letter particularly because he did not know whether PRA could report his debt to credit bureaus notwithstanding its promise otherwise. (Dkt.

---

[1] PRA sent Perea two additional dunning letters attempting to collect the same debt and including similar disclosures. (Dkt. 60 at ¶ 22). The parties' dispute, however, concerns the disclosure language in the February 13, 2018 letter.

2

59 Exhibit A at 52-55; 61). Perea also submits a declaration to the Court in which he states that after reading the letter, he thought PRA could sue him on the debt and report it to credit bureaus, despite its statement that it would not. (Dkt. 59 Exhibit B at ¶¶ 11-13).

On September 24, 2018, Perea initiated suit against PRA claiming that the dunning letter violates Sections 1692e and 1692f of the Fair Debt Collection Practices Act ("FDCPA"). 15 U.S.C. §§ 1692e &1692f.

## **LEGAL STANDARD**

Summary judgment is proper where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A genuine dispute as to any material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The substantive law controls which facts are material. *Id*. The party seeking summary judgment has the burden of establishing that there is no genuine dispute as to any material fact. *See Celotex*, 477 U.S. at 323 (1986).

After a "properly supported motion for summary judgment is made, the adverse party must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 250 (internal quotations omitted). Construing the evidence and facts supported by the record in favor of the non-moving party, the Court gives the non-moving party "the benefit of reasonable inferences from the evidence,

3

but not speculative inferences in [its] favor." *White v. City of Chicago*, 829 F.3d 837, 841 (7th Cir. 2016) (internal citations omitted). "The controlling question is whether a reasonable trier of fact could find in favor of the non-moving party on the evidence submitted in support of and opposition to the motion for summary judgment." *Id*.

## ANALYSIS

The FDCPA aims "to eliminate abusive debt collection practices by debt collectors[,]" and to that end, prohibits the use of any "false, deceptive, or misleading representation or means in connection with the collection of any debt" or any "unfair or unconscionable means to collect or attempt to collect any debt." 15 U.S.C. §§ 1692; 1692e; 1692f. Perea claims that the disclosure language in PRA's dunning letter violates these provisions of the Act by failing to disclose (1) the effect of partial payment on the statute of limitations, (2) that the statute of limitations on the debt had run, and (3) that no information about the debt could be reported to credit bureaus.[2]

Purportedly misleading language in a dunning letter must be assessed from the perspective of an unsophisticated consumer—that is someone who is "uninformed, naïve, and trusting, but possesses rudimentary knowledge about the financial world, is wise enough to read collection notices with added care, possesses reasonable intelligence, and is capable of making basic logical deductions and

---

[2] As Perea's § 1692e and § 1692f claims "rest[ ] on the same premise … the two claims rise or fall together." *Rueda v. Midland Credit Mgmt., Inc.*, No. 19 C 1739, 2019 WL 3943681, at *1 (N.D. Ill. Aug. 21, 2019). The Court analyzes Perea's claims under the framework of § 1692e in accordance with the parties' briefing. Further, the parties do not dispute that Perea is a consumer and PRA is a debt collector as defined by the FDCPA or that the subject debt falls within the scope of the FDCPA's protection. (Dkt. 71 at ¶¶ 6; 9; 11). The parties' only dispute concerns whether the language used by PRA in its dunning letter was misleading.

inferences." *Williams v. OSI Educ. Servs., Inc*, 505 F.3d 675, 678 (7th Cir. 2007) (internal quotations omitted). The unsophisticated consumer "does not interpret [dunning letters] in a bizarre or idiosyncratic fashion." *Pettit v. Retrieval Masters Creditor Bureau, Inc.*, 211 F.3d 1057, 1060 (7th Cir. 2000). Accordingly, "a statement will not be confusing or misleading unless a significant fraction of the population would be similarly misled." *Id*.

Statements alleged to be misleading or deceptive fall into three categories: (1) "cases involving statements that plainly, on their face, are not misleading or deceptive[,]" in which case, "we grant dismissal or summary judgment in favor of the defendant based on our own determination that the statement complied with the law[;]"(2) "cases involv[ing] statements that are not plainly misleading or deceptive but might possibly mislead or deceive the unsophisticated consumer[,]" in which case, "plaintiffs may prevail only by producing extrinsic evidence, such as consumer surveys, to prove that unsophisticated consumers do in fact find the challenged statements misleading or deceptive[;]" and (3) "[c]ases involving plainly deceptive communications," in which instance "we will grant summary judgment for the plaintiffs without requiring them to prove what is already clear." *Ruth v. Triumph Partnerships*, 577 F.3d 790, 800-01 (7th Cir. 2009). PRA moves for summary judgment on grounds that the challenged disclosure falls into the first category of non-misleading or deceptive communications. Perea brings a cross summary judgment motion arguing that the statements fall into the third category of clearly misleading and deceptive communications.

5

In support of its motion, Perea cites to the Seventh Circuit's recent decision in *Pantoja v. Portfolio Recovery Associates, LLC*, 852 F.3d 679 (7th Cir. 2017). There, as here, PRA sent plaintiff a dunning letter seeking to collect on a time-barred debt and including certain offers to "settle" the debt. *Id*. at 682. The letter included the following disclaimer: "Because of the age of your debt, we will not sue you for it and we will not report it to any credit reporting agency." *Id*. Affirming the district court's grant of summary judgment to plaintiff, the Seventh Circuit held that the letter was deceptive under § 1692e for two reasons. First, "the dunning letter failed to warn [plaintiff] that if he accepted any of the settlement offers, whether by making a partial payment or even by just agreeing to make a payment, he would lose the protection of the statute of limitations." *Id*. at 682-83.[3] The Court observed that "[s]ilence about th[e] significant risk of losing the protection of the statute of limitations renders Portfolio Recovery's dunning letter misleading and deceptive as a matter of law" and instructed that language regarding revival "need[s] to be clear, accessible, and unambiguous to the unsophisticated consumer." *Id*. at 685-86.

Second, the *Pantoja* court found PRA's disclaimer language misleading because it "deceptively said that Portfolio Recovery had chosen not to sue [plaintiff], rather than saying that the debt was so old that Portfolio Recovery could not sue him for the alleged debt." *Id*. at 683; 686 ("The reader is left to wonder whether Portfolio has chosen to go easy on this old debt out of the goodness of its heart, or perhaps because it might be difficult to prove the debt, or perhaps for some other reason.").

---

[3] In Illinois, a new payment or promise to pay restarts the statute of limitations as to the underlying debt. *Pantoja*, 852 F.3d at 684-85 (discussing Illinois law).

6

The Court found compelling that PRA had strategically omitted the preceding language, "[t]he law limits how long you can be sued on a debt," as required by PRA's consent decree with the CFPB. *Id.* at 686. The disclaimer was thus "carefully crafted" and "chosen to obscure from the debtor that the law prohibits the collector from suing to collect this debt or even threatening to do so[.]" *Id.* at 687.

> Here, the relevant language reads:
>
> The law limits how long you can be sued on a debt and how long a debt can appear on your credit report. Due to the age of this debt, we will not sue you for it or report payment or non-payment of it to a credit bureau. In addition, we will not restart the statute of limitations on the debt if you make a payment.

(Dkt. 71 at ¶ 19). Perea asserts that the additional language in the present letter is insufficient to cure either of the deficiencies identified by the *Pantoja* court. First, he claims that the letter still fails to advise that partial payment or a promise to make a payment may eliminate an otherwise ironclad statute of limitations defense under Illinois law. PRA argues, that unlike the language at issue in *Pantoja*, which included *no* language regarding revival of the statute of limitations, the present letter explicitly informs Perea that PRA "will not restart the statute of limitations on the debt if you make a payment." (*Id.*) The Court finds, however, that this language is insufficient as a matter of law under the standard set forth in *Pantoja*.

Just as the *Pantoja* court found a promise not to sue on a stale debt misleading and deceptive without a disclosure that the statute of limitations had run, PRA's promise to not restart the statute of limitations is misleading and deceptive without a disclosure that partial payment or a promise to pay will restart the statute of limitations on the underlying debt according to Illinois law. The *Pantoja* court was

7

particularly concerned that partial payment or a new promise "would have put [plaintiff] in a much worse legal position than he would have been in before taking the step." *Pantoja*, 852 F.3d at 685 ("Silence about that significant risk of losing the protection of the statute of limitations renders Portfolio Recovery's dunning letter misleading and deceptive as a matter of law."). Prior to receiving defendant's letter, the plaintiff had an absolute defense to a collection suit, but after making a payment, he could be subject to suit once again (notwithstanding defendant's promise not to sue). *Id*. The present language does not cure this risk; instead it misleadingly communicates that revival is a matter of the collector's discretion rather than an operation of law, *in order to* induce the reader to make partial payment. Such a partial payment forfeits the protection of the statute of limitations—the consumer's vulnerability to suit is then at the sole discretion of the debt collector. This is not the sort of "clear, accessible, and unambiguous" language mandated by *Pantoja*. *Id*. at 685-86. ("We believe the FDCPA prohibits a debt collector from luring debtors away from the shelter of the statute of limitations without providing an unambiguous warning that an unsophisticated consumer would understand.").

PRA argues that because it has a policy of not restarting the statute of limitations upon partial payment or a new promise to pay and does not sell accounts, "there is no potential 'pitfall' to partial payment, and PRA's explicit promise that it *will not* sue even if Plaintiff makes a payment dispels any potential confusion." (Dkt. 54 at 12) (emphasis in original). This Court considered a similar argument in *Pierre v. Midland Credit Mgmt., Inc.*, No. 16 C 2895, 2018 WL 723278, at *5 (N.D. Ill. Feb.

5, 2018) (granting summary judgment to plaintiff on FDCPA claim under § 1692e). There the defendant argued that a warning regarding revival of the statute of limitations was not "necessary … because of [defendant]'s policy never to revive the statute of limitations after it expires." *Id*. (internal quotations omitted). Rejecting this argument, the Court observed that "revivals of the statute of limitations are controlled not by [defendant]'s policies, but by operation of law" and that "revival would [still] be a hazard to [plaintiff], who may face suit by [defendant] if it changed its policies… ." *Id*. It further observed that "the question in FDCPA cases is whether the at-issue language would mislead or deceive an unsophisticated consumer" and "[a]n unsophisticated consumer would not know about the dangers of revival (even assuming that [defendant]'s letter adequately advises consumers of the statute of limitations in the first instance), and she would certainly not know about [defendant]'s internal policies." *Id*.

The same reasoning applies here. Perea is not expected to know PRA's internal policies regarding suing on debts where the statute of limitations has run or rely on its promises to not pursue a debt collectible in court after the statute of limitations protection has been forfeited. Contrary to PRA's assertion, such policies or promises do not "obviate[ ] any need to explain the mechanics of reviving the statute of limitations under Illinois law[,]" (Dkt. 70 at 3), particularly because such policies and promises (all without consideration) are subject to rescission at a debt collector's whim and to the consumer's detriment.[4]

---

[4] PRA also raises a safe harbor defense premised on compliance with a consent decree with the CFPB. The language mandated by the consent decree, however, does not pertain to a disclosure regarding

9

Thus, because PRA's dunning letter fails to unambiguously inform Perea that a partial payment or new promise to pay would restart the statute of limitations under Illinois law, it is misleading and deceptive as a matter of law.[5] Summary judgment is granted for Plaintiff.

## CONCLUSION

For the foregoing reasons, Defendant's motion for summary judgment is denied and summary judgment is granted for Plaintiff.

E N T E R:

Dated: September 28, 2020

*Mary M Rowland*

MARY M. ROWLAND
United States District Judge

---

revival of the statute of limitations. Because the Court does not separately assess the disclosure language required by the consent decree, the Court declines to consider this argument.

[5] The Court declines to separately assess whether PRA's disclosures regarding the statute of limitations and bar on credit reporting are misleading or deceptive under the FDCPA. Several courts in this district, however, have concluded in denying motions to dismiss that similar language is potentially misleading and does not fall within the first category of statements that are plainly non-misleading or deceptive. *See e.g., Sykes v. Veripro Sols., Inc.*, No. 19-CV-7897, 2020 WL 4926547, at *3-4 (N.D. Ill. Aug. 21, 2020); *Rueda*, 2019 WL 3943681, at *2-3; *Barnett v. Midland Credit Mgmt., Inc.*, No. 19 C 1839, 2019 WL 3825487, at *2 (N.D. Ill. Aug. 15, 2019); *Richardson v. LVNV Funding, LLC*, No. 16 C 9600, 2017 WL 4921971, at *3-5 (N.D. Ill. Oct. 31, 2017); *Collopy v. Dynamic Recovery Sols.*, LLC, No. 16 C 6777, 2017 WL 1321118, at *2-4 (N.D. Ill. Apr. 4, 2017).